# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN JUSTIN JAMES,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SHANT SHEKLANIAN, et al.,<br><br>　　　　Defendants. | 1:08-CV-01943 OWW GSA<br><br>MEMORANDUM DECISION RE DEFENDANTS' CITY OF MADERA AND OFFICER JASON GUTKNECHT'S MOTION FOR SUMMARY JUDGMENT (DOC. 25) |

## I. INTRODUCTION

Defendants City of Madera and Officer Jason Gutknecht move for summary judgment on all claims brought against them by Plaintiff John Justin James. This motion was originally set for hearing on February 8, 2010. Doc. 25. On January 27, 2010, Plaintiff was granted a continuance to accommodate counsel's staffing problems. Doc. 29. The hearing was reset for March 1, 2010, making Plaintiffs' opposition due February 16, 2010. Plaintiff failed to timely file any opposition or request a further continuance.

## II. UNDISPUTED FACTUAL BACKGROUND

A. **Officer Gutknecht's Conduct.**

On the evening of January 26, 2007, City of Madera Police Officers Shant Sheklanian and Jason Gutknecht were on duty,

1

riding together in a marked patrol vehicle. Undisputed Material Fact ("UMF") # 1. At approximately 11:25 p.m., dispatch advised that there were approximately thirty suspects involved in an altercation outside of the Back Street Bar & Grill in Madera. UMF #2. Dispatch advised that a person with his shirt off was fighting. UMF #3.

Upon their arrival on the scene, the Officers encountered numerous subjects in the middle of Modoc Avenue. UMF ## 4-5. Officer Gutknecht heard yelling and screaming, and noticed persons with their shirts off as though they had been fighting. UMF #6. He then exited the passenger side of the vehicle. UMF #7. Officer Gutknecht then encountered a subject who directed Gutknecht's attention to another individual with his shirt off. Gutknecht later learned that the second individual was Plaintiff, Justin Page. UMF #8. Officer Gutknecht ordered Page to sit on the curb. UMF #9.

Gutknecht then approached Page near the curb. UMF #10. Plaintiff was aware that Gutknecht was a police officer. UMF #11. Officer Gutknecht asked Plaintiff "what's going on?" UMF #12. Plaintiff responded: "I don't know what's going on." UMF #13. According to Plaintiff, Plaintiff was then tackled from the side by Officer Sheklanian. UMF #14. While the two were falling to the ground, Plaintiff swung at Officer Sheklanian approximately 2-3 times. UMF #15-16.

Plaintiff ended up on top of Officer Sheklanian, at which time Plaintiff realized Sheklanian was a police officer. UMF ## 17-18. According to Plaintiff, after realizing Sheklanian was a police officer, he took 3-4 steps back and sat on the sidewalk. UMF #19. During this physical confrontation, Officer Gutknecht took action to keep the crowd away from Officer Sheklanian and Plaintiff. UMF #20.

Officer Sheklanian then ordered Plaintiff to lie on his stomach. UMF #21. Instead of complying with the order, Plaintiff told Officer Sheklanian that he "didn't do anything wrong." UMF #22. Plaintiff contends that Officer Sheklanian deployed his taser on him "as soon as I got done saying I didn't do anything wrong." UMF #23. Plaintiff was then handcuffed by another police officer, and placed in a patrol vehicle. UMF No. 24.

B.  Facts Related to the City of Madera's Liability.

1.  General Background.

The Madera Police Department ("MPD") is a recognized and fully certified law enforcement agency, in full compliance with the minimum standards set forth by the California Commission on Peace Officer Standards and Training ("P.O.S.T."). At all times relevant to the instant action, it was the policy of MPD that its police officers must comply with general standards in law enforcement. UMF ## 28-29.

### 2. General Use of Force Guidelines.

MPD had at all relevant times a written use of force policy that was consistent with state and federal law, and the use of force policies of other police agencies in California and across the nation. UMF ## 31-32. Each new employee at MPD was presented with the policy manual. UMF #33. It was the policy of MPD that police officers shall use only that amount of force that reasonably appears necessary, given the facts and circumstances perceived by the officer at the time of the event, to effectively bring an incident under control. UMF #34. The use of force policy authorized officers to use reasonable force to defend themselves or others, effect an arrest or detention, prevent escape and/or overcome resistance. UMF #35.

### 3. Pain Compliance and Taser Guidelines.

It was the policy of MPD to only apply those pain compliance techniques for which the officer received departmentally-approved training, and only when the officer reasonably believed that the use of such a technique appears reasonably necessary to further a legitimate law enforcement purpose. UMF No. 36.

Likewise, it was the policy of MPD for an officer to provide a verbal announcement of the intended use of the Taser prior to the application of the Taser, unless doing so would endanger officer safety or was otherwise impractical. UMF #37. The use of a Taser on a subject by authorized personnel was allowed when

circumstances at the time indicated that the use of the Taser would be reasonable to subdue or control a violent or physically resisting subject. UMF #38. The use of the Taser to subdue a potentially violent or physically resisting subject was allowed if (1) the subject has verbally or physically demonstrated an intention to resist; (2) the officer provided a verbal warning to the subject and an opportunity to comply; and (3) other available options reasonably appear ineffective or would present a greater danger to the officer or the subject. UMF #39.

4. Hiring & Training Practices.

MPD followed the standards set forth by P.O.S.T. in hiring officers. It has a selection and screening process that includes an oral interview, a background investigation, a polygraph and a psychological evaluation. UMF #40. MPD officers were required to attend a P.O.S.T. certified academy. UMF #41.

It was the policy of the MPD to comply with the officer training requirements outlined by P.O.S.T. UMF ## 42-43. Officers received training in the police academy, field-training programs, on-the-job training, advanced officer courses, and various classes and seminars offered throughout the State of California. UMF ## 44-46.

5. Supervision.

At the time of the subject incident, MPD officers were supervised through a standard chain of command. UMF #48.

5

Officers were supervised on a daily basis, and received yearly written performance reviews. UMF ## 49-50. MPD Officers were expected to comply with MPD policies, practices, procedures, and training requirements, and were subject to disciplinary actions if they failed to do so. UMF #51.

    6.    <u>Investigations of Alleged Officer Misconduct.</u>

It was the policy and practice of MPD to conduct thorough investigations into allegations of misconduct on the part of its police officers. UMF #53. An administrative investigation could be initiated by a citizen through the presentation of a citizen complaint or internally. UMF #54. It was the policy of MPD to take sufficient corrective action to prevent its employees from committing misconduct. UMF No. 55.

MPD executive management reviewed the incident at issue in this case. UMF #56. MPD Chief Kime did not request an administrative investigation because he did not believe the evidence suggested that excessive force was utilized, or an improper arrest was made. UMF #57.

### III. <u>STANDARD OF DECISION</u>

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment

6

"always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless*, Inc., 509 F.3d 978, 984 (9th Cir. 2007); *see also S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (noting that a party moving for summary judgment on a claim as to which it will have the burden at trial "must establish beyond controversy every essential element" of the claim) (internal quotation marks omitted). With respect to an issue as to which the non-moving party will have the burden of proof, the movant "can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Soremekun*, 509 F.3d at 984.

When a motion for summary judgment is properly made and supported, the non-movant cannot defeat the motion by resting upon the allegations or denials of its own pleading, rather the "non-moving party must set forth, by affidavit or as otherwise

7

provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Id.*

To defeat a motion for summary judgment, the non-moving party must show there exists a genuine dispute (or issue) of material fact. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "[S]ummary judgment will not lie if [a] dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. In ruling on a motion for summary judgment, the district court does not make credibility determinations; rather, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

## IV. DISCUSSION

A.  Claims Against Officer Gutknecht.

The Complaint, which is brought under Title 42 U.S.C., section 1983 ("Section 1983") and the Fourth and Fourteenth Amendments to the United States Constitution, alleges that Officer Gutknecht's "unlawful and malicious physical abuse of Plaintiff..." caused Plaintiff "grievous bodily harm," and

"deprived [him] of his right to be secure in his person against unreasonable seizure of his person, in violation of the Fourth and Fourteenth Amendments...." Doc. 1, Compl., at 3-4.

Officer Gutknecht invokes the defense of qualified immunity, which protects defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 943 (9th Cir. 2004). Qualified immunity requires the court to inquire whether, taken in the light most favorable to the party asserting injury, do the facts alleged show the officer's conduct violated a clearly established constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001); *see also* Pearson v. Callahan, 129 S. Ct. 808 (2009). If the plaintiff's factual allegations do not establish a violation of a constitutional (or other federal) right, the court need not inquire whether the right was "clearly established." *Pearson*, 12 S. Ct. at 818 (permitting court to exercise its "sound discretion" to determine the order in which qualified immunity is analyzed).

1. <u>Personal Participation.</u>

Liability for a constitutional tort "arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Plaintiff must establish the "integral participation" of Officer Gutknecht in

9

the alleged constitutional violations. *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002).

Here, it is undisputed that the only contact Officer Gutknecht had with Plaintiff was to ask him to sit onthe curb, followed by asking him a single question: "What's going on?" Plaintiff does not allege that this conduct implicated his Fourth Amendment rights. *See I.N.S. v. Delgado*, 466 U.S. 210, 216-217 (1984)(unless circumstances of encounter with police are so intimidating as to demonstrate that a reasonable person would have believed that he was not free to leave if he did not respond, questioning does not result in detention under the Fourth Amendment). Officer Gutnecht did not attempt to detain Plaintiff prior to the altercation with Officer Sheklanian, UMF ## 10-13, nor did Officer Gutknecht participate in the force applied by Officer Sheklanian, UMF ## 14¬17, 21-23. Officer Gutknecht's subsequent participation was limited to keeping the crowd away. Gutknecht had no direct participation in any alleged Fourth Amendment violation.[1]

Officer Gutknecht's motion for summary judgment on the Fourth Amendment claim is GRANTED.

2. <u>Fourteenth Amendment Claim.</u>

Plaintiff also alleges that his Fourteenth Amendment rights were violated. The central basis for this allegation appears to

---

[1] Plaintiff has not argued that Gutknecht is liable under the Fourth Amendment for failing to intercede.

10

be Plaintiff's claim of excessive use of force. "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994). For this reason, claims of excessive force or unlawful arrest must be analyzed under the Fourth Amendment and its reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989).

Plaintiff also alleges that he was charged with Penal Code violations based on "false and fabricated" reports of the defendant officers. However, generally, "the due process requirements for criminal proceedings do not include a standard for the initiation of a criminal prosecution." *Albright v. Oliver*, supra, 510 U.S. at 283. Although a Plaintiff may bring a Section 1983 claim for false arrest and/or malicious under the Fourth Amendment, *see Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002), such a claim requires a showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith. *See Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004). Plaintiff has presented no such evidence.

The Fourteenth Amendment is not implicated in this case.

11

Office Gutknecht's Motion for Summary Judgment on the Fourteenth Amendment Claim is GRANTED.

Because Plaintiff has failed to establish that Officer Gutknecht has violated any federal right, it is not necessary to further examine qualified immunity.

B.   Claims Against the City of Madera

A public entity can only liable under Section 1983 for injuries inflicted pursuant to a governmental "policy or custom." *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978).  To establish such liability, the plaintiff must establish that: (1) a violation of constitutional rights occurred; (2) the existence of a municipal policy or custom; and (3) a causal nexus between the constitutional rights violation and the municipal custom or policy. *City of Canton v. Harris*, 489 U.S. 378, 385-386 (1989).

Plaintiff alleges, among other things, that: (1) MPD failed to discipline Officers Sheklanian and Gutknecht, despite having knowledge that the two Officers were involved in several previous excessive force incidents; (2) the City of Madera was aware of a pattern of excessive force and inadequate discipline within MPD, but took no action; (3) MPD intentionally, knowingly, and recklessly failed to properly instruct its officers on the use of force; (4) the Officers were acting pursuant to official policy

and under the direction of MPD Chief Kime and the City; and (5) MPD and the City approved of and/or ratified the Officers' conduct. Compl. at 4-6. However, Plaintiff has presented <u>absolutely no evidence to support these allegations</u>. To the contrary, the undisputed evidence establishes that MPD's policies and procedures are consistent with established standards. *See* UMF ## 40-52.

The City of Madera's motion for summary judgment on *Monell* claims is GRANTED.

## V. CONCLUSION

For the reasons set forth above, the City and Officer Gutknetch's motions for summary judgment are GRANTED in their entirety.

SO ORDERED
Dated: March 8, 2010

<u>/s/ Oliver W. Wanger</u>
Oliver W. Wanger
United States District Judge